**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA**

ERSTE NORDSEE-OFFSHORE HOLDING GMBH,
Donau-City-Straße 9, 1220 Vienna, Austria

and

ZWEITE NORDSEE-OFFSHORE HOLDING GMBH,
Donau-City-Straße 9, 1220 Vienna, Austria

Petitioners,

v.

FEDERAL REPUBLIC OF GERMANY
Federal Office of Justice
Adenauerallee 99-103
53113 Bonn
Germany

Respondent.

Civil Action No. ___

**PETITION TO RECOGNIZE AND
ENFORCE AN ICSID ARBITRAL AWARD**

**FRESHFIELDS US LLP**
3 World Trade Center
175 Greenwich Street, 51st Floor
New York, NY 10007
Telephone: (212) 277-4000
Facsimile: (212) 277-4001
*Attorneys for Petitioners*

**TABLE OF CONTENTS**

TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

THE PARTIES ........ 2

THE DISPUTE AND THE AWARD ........ 2

LEGAL BASIS FOR RELIEF ........ 8

I. This Court Has Jurisdiction to Recognize and Enforce the Award Because Germany Does Not Benefit from Sovereign Immunity. ........ 8

II. The Court Should Not Entertain Any Substantive Challenges to the Award. ........ 10

III. The Award Must Be Given Full Faith and Credit Pursuant to 22 U.S.C. § 1650a. ........ 11

PRAYER FOR RELIEF ........ 12

# TABLE OF AUTHORITIES

**Cases** **Page(s)**

*Blue Ridge Invs., LLC v. Republic of Argentina*,
735 F.3d 72 (2d Cir. 2013)……8

*Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*,
904 F. Supp. 2d 131 (D.D.C. 2012)……12

*Micula v. Gov't of Romania*,
404 F. Supp. 3d 365 (D.D.C. 2019)……9

**Micula v. Gov't of Romania*,
101 F.4th 47 (D.C. Cir. 2024)……10, 12

*Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*,
863 F.3d 96 (2d Cir. 2017)……10

**NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*,
112 F.4th 1088 (D.C. Cir. 2024)……8

*Pezold v. Republic of Zimbabwe*,
2023 WL 5547912 (D.D.C. Aug. 9, 2023)……8

*Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*,
590 F. Supp. 3d 262 (D.D.C. 2022)……11

*Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*,
2022 WL 17370242 (D.D.C. Aug. 3, 2022)……10

**Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*,
87 F.4th 510 (D.C. Cir. 2023)……10, 11

**Statutes**

*22 U.S.C. § 1650a……1, 9, 10, 11, 12

28 U.S.C. § 1330……8, 9

28 U.S.C. § 1391……9

28 U.S.C. § 1603……2

28 U.S.C. § 1605……8

**Statutes** **Page(s)**

28 U.S.C. § 1608……………………………………………………………………..…9

**Treaties**

Convention of 15 November 1965 on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163…………………………………………………………..…9

Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159………………1

Petitioners Erste Nordsee-Offshore Holding GmbH ("NOH1") and Zweite Nordsee-Offshore Holding GmbH ("NOH2" and together with NOH1, "Petitioners"), by and through their attorneys, state as follows:

**INTRODUCTION**

1. Petitioners respectfully seek recognition and enforcement of an arbitral award pursuant to 22 U.S.C. § 1650a and Article 54 of the Convention on the Settlement of Investment Disputes between States and Nationals of Other States, Mar. 18, 1965, 17 U.S.T. 1270, 575 U.N.T.S. 159 (the "ICSID Convention"). The arbitral award (the "Award") was rendered on December 18, 2024, against Respondent, the Federal Republic of Germany ("Germany"), following an arbitration pursuant to the ICSID Convention and the arbitration rules of the International Centre for the Settlement of Investment Disputes ("ICSID"). In the Award, the arbitral tribunal ("Tribunal") found that Germany had breached its obligations to Petitioners under the Energy Charter Treaty, Dec. 17, 1994, 2080 UNTS 100 (the "ECT"), and awarded Petitioners damages and attorney's fees, with interest. A certified copy of the Award is attached as Exhibit A to the Declaration of Carsten Wendler in support of Petitioners' Petition to Recognize and Enforce an ICSID Arbitral Award ("Wendler Declaration" or "Wendler Decl."), dated April 4, 2025.[1] On January 21, 2025, Petitioners demanded payment from Germany in accordance with the Award; Germany has chosen not to respond to Petitioners' letter. *See* Wendler Decl. Ex. D (Demand Letter).

---

[1] The relevant articles of the ICSID Convention and Arbitration Rules are attached as Exhibit E to the Wendler Declaration.

**THE PARTIES**

2. Petitioners are private limited liability companies incorporated under the laws of Austria, with their registered address and principal place of business located at Donau-City-Straße 9, 1220 Vienna, Austria.

3. Respondent is a foreign State within the meaning of the Foreign Sovereign Immunities Act ("FSIA"). *See* 28 U.S.C. § 1603(a). Germany is currently a signatory to the ICSID Convention and was also a signatory to the ICSID Convention on September 10, 2019, the date that Petitioners initiated the Arbitration.

**THE DISPUTE AND THE AWARD**

4. The dispute underlying the Award arose from a series of German legislative and regulatory measures that negatively affected the development and value of Petitioners' offshore wind projects in Germany's exclusive economic zone in the North Sea. *See* Wendler Decl. Ex. A (Award), at ¶¶ 123-138; Wendler Decl. ¶¶ 4, 6.

5. Beginning in 1997, Germany required prospective offshore wind developers to obtain approval from its Federal Maritime and Hydrographic Agency to build and operate offshore wind projects. Germany also, however, implemented a regulatory framework designed to encourage and induce investments in offshore wind. For example, starting in 2000, such projects could benefit from a favorable feed-in tariff and the right to connect to the energy grid. *See* Wendler Decl. Ex. A (Award), at ¶¶ 78-81. Between 2002 and 2006, Germany streamlined the approval process, extended feed-in tariff periods and shifted grid connection costs from project developers to the transmission system operators. *Id.* at ¶¶ 84-89. In 2009, Germany increased its renewable energy targets and introduced incentives for the early completion of offshore wind projects. Finally, to address financing and grid connection challenges, Germany's Federal Network Agency (the "BNA") set out the criteria which, once met, gave developers an unconditional right to connect to

the energy grid within 30 months from the date that a project fulfilled all requirements for an unconditional grid connection. *Id.* at ¶¶ 91-96.

6. The attractiveness of Germany's regulatory framework led the Petitioner's parent company STRABAG SE to invest into a pipeline of offshore wind projects between December 2011 and January 2012. Specifically, Petitioners were incorporated to develop a total of 15 offshore wind projects in the German North Sea. *Id.* at ¶¶ 111-19.

7. But after Petitioners made investments totaling around EUR 122 million in these offshore wind projects, Germany began to withdraw the favorable regulatory framework that had induced Petitioners' investments in the first place. *Id.* at ¶¶ 116, 118-19, 123-24, 127. First, on December 28, 2012, Germany amended the Energy Act (the "2012 Energy Act"), introducing a new central planning system for offshore wind and grid expansion, built around annual development plans adopted by the BNA. *Id.* at ¶ 125. The development plans for the years 2013-2015 delayed the grid connection dates for all of Petitioners' projects by at least several years and delayed some of those projects indefinitely. *Id.* at ¶¶ 128-29, 134-35. As a result, the value of the Petitioners' projects decreased significantly. *Id.* at ¶¶ 433, 467, 601.

8. Then, in 2014, Germany adopted a new energy policy that reduced offshore wind expansion targets and introduced a tender system for grid capacity allocation. *Id.* at ¶¶ 131-32. At the same time, the BNA adopted new rules for the allocation of grid capacity, which eliminated developers' (including Petitioners') right to obtain grid connections when needed. *Id.* In 2015, Germany informed Petitioners that it would no longer process any of NOH2's projects, as well as one of NOH1's projects, because they would not receive a grid connection within 10 years under the new development plan. Faced with this unreasonably long and unexpected wait to connect to the energy grid (which, under the initial framework, would have been required within just 30

months of a project fulfilling all relevant criteria), NOH1 sold its remaining projects to mitigate its damages. *Id.* at ¶ 133.

9. Finally, in 2017, Germany began to use a mandatory tendering system for developing offshore wind projects. *Id.* at ¶¶ 136-37. Under this new system, on 1 January 2017, Germany terminated all ongoing approval procedures for NOH2's projects such that NOH2 lost its legal position for all its projects. *Id.* at ¶¶ 138, 411. As a result, the investments of around EUR 55 million made by NOH2 in the development of these projects were lost without compensation. *Id.* at ¶ 471.

10. Seeking to obtain compensation for the significant losses they had suffered, on September 10, 2019, Petitioners filed a request for arbitration against Germany under the ECT. *See id.* at ¶ 5; *see also* Wendler Decl. ¶ 5; Wendler Decl. Ex. F (ECT). Petitioners argued that Germany had breached the ECT through measures that unexpectedly and fundamentally changed the process for developing offshore wind farm projects in the North Sea, frustrating their legitimate expectations and depriving the project companies of their economic value. Petitioners' parent company STRABAG SE also alleged that these measures had destroyed the value of its investment into the development of a novel, environmentally friendly technology to install foundations for wind turbines in the German North Sea (the "Gravity Foundation Technology"). *See* Wendler Decl. Ex. A (Award) at ¶¶ 328, 372, 381, 433, 442, 538, 543; Wendler Decl. ¶¶ 5-6.

11. On May 7, 2020, the Tribunal was constituted in accordance with Article 37(2)(b) of the ICSID Convention. Wendler Decl. Ex. A (Award), at ¶ 10; *see* Wendler. Decl. ¶ 5.

12. The arbitration proceedings were extensive, and Petitioners and Germany participated fully at every stage. In its pre-hearing written submissions, Germany vigorously contested the Tribunal's jurisdiction, the merits of the dispute, and the damages claimed by

Petitioners. Wendler Decl. Ex. A (Award), at ¶¶ 11, 17, 28, 31, 37; *see also* Wendler. Decl. ¶ 7. Petitioners likewise submitted substantial pre-hearing written submissions on jurisdiction, the merits, and damages. Wendler Decl. Ex. A (Award), at ¶¶ 15, 20, 29, 35, 38; *see also* Wendler Decl. ¶ 7. The Tribunal also ordered both parties to produce documents. Wendler Decl. Ex. A (Award), at ¶¶ 32-34; *see also* Wendler. Decl. ¶ 7. In September 2023, the Tribunal held two weeks of hearing on jurisdiction, merits, and damages in London, United Kingdom, Wendler Decl. Ex. A (Award), at ¶ 48, at which the parties made oral submissions and examined witnesses, *see* Wendler Decl. ¶ 7. The parties subsequently submitted post-hearing briefs. Wendler Decl. Ex. A (Award), at ¶¶ 50-53; *see also* Wendler Decl. ¶ 7.

13. On December 18, 2024, the Tribunal issued a thorough and well-reasoned 226-page Award. The Tribunal unanimously found that it had jurisdiction over Petitioners' claims. *See* Wendler Decl. Ex. A (Award), at ¶ 310. In that context, the Tribunal considered and rejected Germany's objection that there was no valid arbitration agreement under the ECT and the ICSID Convention because Petitioners were nationals of another European Union Member State. *See id.* at ¶¶ 188-219. A majority of the Tribunal found that Germany had breached the standard of fair and equitable treatment under Article 10(1) of the ECT.[2] *See id.* at ¶ 434. The Tribunal

[2] The arbitrator appointed by Germany, Professor Dr. Maria Chiara Malaguti, issued a partial dissent regarding the legality of the measures taken by Germany between 2013 and 2015, which in her view did not amount to a breach of the fair and equitable treatment standard. Professor Dr. Maria Chiara Malaguti would have found that Germany breached the fair and equitable treatment standard of Article 10(1) of the ECT in 2017. *See* Wendler Decl. Ex. A (Award), Dissenting Opinion of Arbitrator Professor Dr. Maria Chiara Malaguti, at ¶¶ 2, 5-6, 32-33, 45-50.

unanimously found that Germany had also expropriated Petitioners' investments in violation of Article 13(1) of the ECT. *See id.* at ¶ 471.[3]

14. The Tribunal ordered Germany to pay NOH1 EUR 61,400,000, plus pre-Award interest at a rate equal to 3% compounded annually from 18 December 2013, for the diminished value at which NOH1 divested its project companies because of Germany's measures. The Tribunal awarded NOH2 EUR 179,546,773.55 plus pre-Award interest at a rate equal to 3% compounded annually from 18 December 2013, for the entire fair market value of NOH2's project companies but for Germany's unlawful measures. Wender Decl. Ex. A (Award), at ¶¶ 594, 633, 637, 657-58, 689; *see also* Wendler Decl. ¶ 9.

15. The Tribunal also ordered Germany to pay 67% of Petitioners' legal costs and Petitioners to pay 33% of Germany's legal costs. The Tribunal set-off the sums owed by Petitioners to Germany from the sums owed by Germany to Petitioners, and thus ordered Germany to pay Petitioners USD 368,500, GBP 548,577.33, and EUR 4,879,218.32.[4] Wendler Decl. Ex. A (Award), at ¶ 687. The Tribunal ordered Germany to pay interest at a rate of 3%, compounded annually on damages and legal costs awarded from 60 days following the date of the Award (February 16, 2025) to the date of payment. *See id.* at ¶¶ 657-58, 689; Wendler Decl. ¶ 9.

---

3 The Tribunal rejected Petitioners' claims that Germany's measures had also breached the full protection and security standard and the non-impairment standard under Article 10(1) of the ECT. *See* Wendler Decl. Ex. A (Award), at ¶¶ 488-90, 513-17. The Tribunal also rejected the claim of Petitioners' parent company STRABAG SE that Germany's measures had caused the failure of its business to deploy and market the Gravity Foundation Technology for the installation of wind turbine foundations in the North Sea. *See id*. at ¶¶ 391-93; Wendler Decl. ¶¶ 6, 8.

4 The Tribunal also allowed Germany to deduct, upon payment, future compensation paid to NOH2 pursuant to German domestic legislation enacted in 2020 addressing the 2017 measures. *See* Wendler Decl. Ex. A (Award), at ¶¶ 689(k). To date, Germany has not paid NOH2 any additional compensation besides the sums identified in the Award. *Id.* at ¶¶ 646-51, 689(k); Wendler Decl. ¶ 9.

16. On January 31, 2025, Germany applied for rectification of the Award pursuant to Article 49(2) of the ICSID Convention and Rule 49 of the 2006 ICSID Arbitration Rules. In its application, Germany requested a stay of enforcement of the Award until the rectification decision has been rendered. Wendler Decl. Ex. C (Germany's Request for Rectification of the Award), at ¶ 169; Wendler Decl. ¶ 10. On March 10, 2025, the Tribunal unanimously rejected Germany's request for this stay of enforcement. Wendler Decl. Ex. B (Decision on Germany's Request for a Stay of Enforcement and other Measures), at ¶ 63; Wendler Decl. ¶ 10.

17. Germany requests the rectification of an operative part of the Award only in relation to an alleged calculation error of reimbursable amounts in the Tribunal's cost decision, that is, ¶ 689(j) of the Award. Wendler Decl. ¶ 11. The remainder of the Tribunal's monetary award at ¶¶ 689(e)-(h) is unaffected by Germany's rectification application and will, in all circumstances, remain unaffected by the Tribunal's forthcoming rectification decision.

18. Given that the Tribunal's costs decision is subject to a request for rectification, Petitioners do not presently seek recognition and enforcement of the Award insofar as it relates to the costs amount (as set out at paragraph 689(j) of the Award) – but rather only in relation to the damages and interests amounts (as set out at paragraphs 689(e)-(h) of the Award). Petitioners will amend this Petition to reflect the Tribunal's decision on rectification of the costs decision, once rendered.

19. It is undisputed that the Tribunal granted (i) a total amount of damages of EUR 240,946,773.55; (ii) plus pre-Award interest on this amount as of December 18, 2013 at a rate of 3% per annum until the date of the Award (i.e., December 18, 2024), compounded yearly; and (iii) post-Award interest at a rate of 3% per annum, payable as of February 16, 2025 until the date of payment of such amounts in full, compounded yearly. *See* Wendler Decl. ¶ 9. As of April 4,

2025, the total amount of damages granted in the Award is EUR 334,477,269.51, consisting of: (i) EUR 240,946,773.55, plus (ii) EUR 92,579,911.43 in pre-Award interest on the damages, and (iii) EUR 950,584.53 in post-Award interest on the damages.[5] *See* Wendler Decl. ¶ 14. Germany has not paid Petitioners any of those damages.

## LEGAL BASIS FOR RELIEF

### I. This Court Has Jurisdiction to Recognize and Enforce the Award Because Germany Does Not Benefit from Sovereign Immunity.

20. This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1330(a), which provides that the United States District Courts shall have original subject matter jurisdiction over any nonjury civil action against a foreign State unless the foreign State is entitled to immunity under the FSIA or an applicable international agreement.

21. Germany is not entitled to immunity in this action for two independent reasons. First, Germany waived immunity for the purpose of this Petition by becoming a party to the ICSID Convention. *See* 28 U.S.C. § 1605(a)(1); *Blue Ridge Invs., LLC v. Republic of Argentina*, 735 F.3d 72, 84 (2d Cir. 2013) (finding that the state party "waived its sovereign immunity by becoming a party to the ICSID Convention"); *see also NextEra Energy Glob. Holdings B.V. v. Kingdom of Spain*, 112 F.4th 1088, 1100 (D.C. Cir. 2024) (noting that the "waiver issue" has been endorsed in this circuit but declining to decide the question given the clear grant of immunity through the "arbitration exception" in 28 U.S.C. § 1650(a)(6)). Second, Germany is not entitled to immunity because this Petition seeks to recognize and enforce an arbitral award made pursuant to the ICSID Convention, which is a treaty in force in the United States calling for the recognition and enforcement of arbitral awards. *See* 28 U.S.C. § 1605(a)(6); *Pezold v. Republic of Zimbabwe*, 2023

[5] Petitioners would be pleased to provide the Court with updated interest calculations at a date closer to the entry of judgment.

WL 5547912, at *3 (D.D.C. Aug. 9, 2023), *aff'd*, 2024 WL 4763943 (D.C. Cir. Nov. 13, 2024) ("Courts, including this one, have consistently 'held that the FSIA's arbitration exception confers subject matter jurisdiction over petitions to enforce ICSID awards.'") (quoting *Micula v. Gov't of Romania*, 404 F. Supp. 3d 265, 277 (D.D.C. 2019), *aff'd*, 805 F. App'x 1 (D.C. Cir. 2020)). As such, Germany is not entitled to sovereign immunity in this action.

22. This Court also has subject matter jurisdiction over this action pursuant to 22 U.S.C. § 1650a(b), which provides that "[t]he district courts of the United States . . . shall have exclusive jurisdiction over actions and proceedings" to enforce an ICSID award. *See Micula*, 404 F. Supp. 3d at 269 (holding that 22 U.S.C. § 1650a(b) grants district courts subject matter jurisdiction over actions or proceedings to recognize and enforce ICSID awards).

23. This Court may exercise personal jurisdiction over Germany pursuant to 28 U.S.C. § 1330(b), which provides that district courts have personal jurisdiction over a foreign State that, like Germany in this action, is not entitled to immunity, provided that service of process is effected in accordance with 28 U.S.C. § 1608. Petitioners intend to serve process in a timely manner on Germany pursuant to 28 U.S.C. § 1608(a), including, if required, through the Convention on the Service Abroad of Judicial and Extrajudicial Documents in Civil or Commercial Matters, Nov. 15, 1965, 20 U.S.T. 361, 658 U.N.T.S. 163.

24. Venue is proper in this district under 28 U.S.C. § 1391(f)(4), which provides that a party may bring a civil action against a foreign State in the United States District Court for the District of Columbia.

25. This Court therefore has subject matter jurisdiction to enforce the Award, has personal jurisdiction over Germany, and the District of Columbia is the proper venue for this action.

**II. The Court Should Not Entertain Any Substantive Challenges to the Award.**

26. This Court should not entertain any substantive challenges to the Award. Article 53(1) of the ICSID Convention explicitly prevents parties to an ICSID arbitration from challenging the substance of an award in court:

> The award shall be binding on the parties and shall not be subject to any appeal or to any other remedy except those provided for in this Convention. Each party shall abide by and comply with the terms of the award except to the extent that enforcement shall have been stayed pursuant to the relevant provisions of this Convention.

*See* Ex. E (ICSID Convention Excerpts), at Art. 53(1). 22 U.S.C. § 1650a(a) similarly provides that the Federal Arbitration Act ("FAA") does not apply to the enforcement of ICSID Convention awards; *see Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela, Ministerio del Poder Popular para Relaciones Exteriores*, 87 F.4th 510, 520 (D.C. Cir. 2023) ("Section 1650a . . . expressly forecloses collateral attack on ICSID awards in federal courts by excluding ICSID enforcement actions from the purview of the FAA); *see also Mobil Cerro Negro, Ltd. v. Bolivarian Republic of Venezuela*, 863 F.3d 96, 117-18 (2d Cir. 2017) (noting that a plenary proceeding to recognize and enforce an ICSID award does not allow a respondent to put forth substantive defenses or defenses grounded in the FAA).

27. Accordingly, Germany may not collaterally attack the Award in this proceeding. Germany must raise any challenges to perceived defects in the Award through ICSID's annulment mechanism. *See Micula v. Gov't of Romania*, 101 F.4th 47, 53 (D.C. Cir. 2024) ("Under the ICSID Convention, the 'only route for setting aside an ICSID Arbitral Tribunal's award is through the . . . annulment process.'"). To date, Germany has not moved to annul the Award. *See* Wendler Decl. ¶¶ 10-12. Further, no stay of enforcement has been put in place, leaving no bar to recognition or enforcement of the Award. *See* Wendler Decl. ¶ 12; *Valores Mundiales, S.L. v. Bolivarian Republic of Venezuela*, 2022 WL 17370242, at *2 (D.D.C. Aug. 3, 2022) ("[E]xcept to the extent that

enforcement is stayed, the tribunal's award remains binding on the parties and . . . not subject to any appeal or any other remedy other than those set forth in the ICSID Convention." (internal quotation marks omitted)).

28. Nor does this Court have cause to engage in an examination of the Award's merits. *Valores Mundiales, S.L*, 87 F.4th at 520 ("By removing ICSID awards from the FAA's purview, Congress rejected the possibility that the FAA's grounds for vacatur could be applied to an ICSID award, thus reducing the scope of judicial review of ICSID awards below even the 'extremely limited' review available under the FAA."). Instead, this Court need only "ensure that it has subject-matter and personal jurisdiction; that the award is authentic; and that its enforcement order tracks the award"—all of which is satisfied here. *Tethyan Copper Co. Pty Ltd. v. Islamic Republic of Pakistan*, 590 F. Supp. 3d 262, 268 (D.D.C. 2022) (explaining the "exceptionally limited" role of district courts in confirming ICSID arbitral awards.).

**III. The Award Must Be Given Full Faith and Credit Pursuant to 22 U.S.C. § 1650a.**

29. Article 54(1) of the ICSID Convention requires Contracting States to "recognize an award rendered pursuant to [the] Convention as binding and enforce the pecuniary obligations imposed by that award within its territories as if it were a final judgment of a court in that State." Ex. E (ICSID Convention Excerpts), at Art. 54(1).

30. To fulfill this obligation, the United States passed implementing legislation that requires United States District Courts to give full faith and credit to ICSID awards. 22 U.S.C. § 1650a(a) provides:

> An award of an arbitral tribunal rendered pursuant to chapter IV of the [ICSID] convention shall create a right arising under a treaty of the United States. The pecuniary obligations imposed by such an award shall be enforced and shall be given the same full faith and credit as if the award were a final judgment of a court of general jurisdiction of one of the several States. The Federal Arbitration Act

> (9 U.S.C. § 1 et seq.) shall not apply to enforcement of awards rendered pursuant to the [ICSID] convention.

Recognition of the award and enforcement of the pecuniary obligations therein is thus required by the text of Section 1650a and this Court's jurisprudence. *See, e.g.*, *Micula*, 101 F.4th at 54 ("Congress enacted Section 1650a . . . to give effect to the United States' treaty obligations under the ICSID Convention, requiring U.S. courts to give 'full faith and credit' to ICSID awards."); *Duke Energy Int'l Peru Invs. No. 1 Ltd. v. Republic of Peru*, 904 F. Supp. 2d 131, 132-133 (D.D.C. 2012) (noting that courts are "*required* by statute to give the Award full faith and credit and confirm it accordingly" (emphasis in original)).

31. As explained above, the Award grants Petitioners damages, arbitration legal costs, and interest, all of which is pecuniary within the meaning of Article 54 of the ICSID Convention and 22 U.S.C. § 1650a. Accordingly, because this Court has subject matter jurisdiction over the dispute, personal jurisdiction over the parties, and has received an authentic certified copy of the Award, *see* Wendler Decl. Ex. A (Award), this Court should recognize and enforce the Award to the extent requested.

**PRAYER FOR RELIEF**

WHEREFORE, Petitioners respectfully request that the Court enter an order:

a) Recognizing and enforcing the Award as a judgment of this Court, pursuant to 22 U.S.C. § 1650a and Article 54 of the ICSID Convention;

b) Entering judgment in favor of Petitioners and against Germany in the amount of the damages and interest on damages ordered under the Award, *i.e.*:

   i. damages awarded by the Tribunal in the amount of EUR 240,946,773.55;

   ii. pre-Award interest on the damages awarded by the Tribunal in the amount of EUR 92,579,911.43;

        iii.    post-Award interest on the damages awarded by the Tribunal until the date of judgment; and

        iv.    post-judgment interest at the statutory rate set forth in 28 U.S.C. § 1961;

c) Ordering Germany to pay the costs of this proceeding; and

d) Granting Petitioners such other and further relief as the Court deems just and proper.

Dated: April 4, 2025  
      New York, New York

Respectfully submitted,

By: */s/ David Y. Livshiz*  
David Y. Livshiz, D.C. Bar No. NY0269  
david.livshiz@freshfields.com  
Paige von Mehren (*pro hac vice* forthcoming)  
paige.vonmehren@freshfields.com  
Marcus V.A. Levy (*pro hac vice* forthcoming)  
marcus.levy@freshfields.com  
FRESHFIELDS US LLP  
3 World Trade Center  
175 Greenwich Street  
51st Floor  
New York, NY 10007  
Telephone: (212) 277-4000

*Attorneys for Petitioners*  
*Erste Nordsee-Offshore Holding GmbH,*  
*Zweite Nordsee-Offshore Holding GmbH*