# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| ERSTE NORDSEE-OFFSHORE HOLDING GMBH<br><br>and<br><br>ZWEITE NORDSEE-OFFSHORE HOLDING GMBH,<br><br>Petitioners,<br><br>v.<br><br>FEDERAL REPUBLIC OF GERMANY<br><br>Respondent. | Civil Action No. ___ |

## DECLARATION OF CARSTEN WENDLER

I, Carsten Wendler, declare pursuant to 28 U.S.C. § 1746 as follows:

1. I am an attorney and a partner with the international law firm Freshfields, which operates as Freshfields PartG mbB in Germany. I am counsel for Petitioners Erste Nordsee-Offshore Holding GmbH ("NOH1") and Zweite Nordsee-Offshore Holding GmbH ("NOH2" and together with NOH1, "Petitioners") in the arbitration against the Federal Republic of Germany ("Germany") underlying this enforcement proceeding (the "Arbitration"). I make this declaration based on my personal knowledge obtained during my representation of Petitioners in the Arbitration, my review of the record of the Arbitration, and the exhibits attached to this declaration.

2. I respectfully submit this declaration in support of Petitioners' Petition to Recognize and Enforce an ICSID Arbitral Award. The Petition seeks entry of judgment recognizing and enforcing the arbitral award dated December 18, 2024 (the "Award") rendered in

Petitioners' favor against Germany pursuant to the Energy Charter Treaty, Dec. 17, 1994, 2080 UNTS 100 (the "ECT"), to which Germany and Austria were parties at all relevant times. The Arbitration was conducted under the rules of the International Centre for Settlement of Investment Disputes ("ICSID") and pursuant to the Convention on the Settlement of Investment Disputes between States and Nationals of Other States (the "ICSID Convention"). The Arbitration was captioned *STRABAG SE, Erste Nordsee-Offshore Holding GmbH and Zweite Nordsee-Offshore Holding GmbH v Federal Republic of Germany*, ICSID Case No. ARB/19/29.

       3.      A true and correct copy of the Award, certified by the Secretary General of ICSID, is attached to this Declaration as Exhibit A. A true and correct copy of the Decision on the Respondent's Request for a Stay of Enforcement of the Award, Return of the Certified Award and Suspension of Accrual of Interest, dated March 10, 2025 ("Decision on Germany's Request for a Stay of Enforcement and Other Measures") is attached hereto as Exhibit B. A true and correct copy of Germany's Request for Rectification of the Award dated January 31, 2025 is attached hereto as Exhibit C. A true and correct copy of Petitioners' letter to Germany demanding payment of the Award dated January 21, 2025 ("Petitioners' Demand Letter"), with financial account information redacted, is attached hereto as Exhibit D. True and correct copies of the relevant articles of the ICSID Convention and Arbitration Rules are attached to this Declaration as Exhibit E. A true and correct copy of the ECT is attached hereto as Exhibit F.

       4.      The Arbitration arose from a series of German legislative and regulatory measures that negatively affected the development and value of Petitioners' offshore wind projects in Germany's exclusive economic zone in the North Sea. *See* Ex. A (Award), at ¶¶ 128-38. The details of the underlying dispute are set out more fully in paragraphs 76 to 148 of the Award and

in the Petition to Recognize and Enforce an ICSID Arbitral Award filed concurrently with the present declaration.

5. On September 10, 2019, Petitioners filed a request for arbitration against Germany under the ECT. Petitioners alleged that Germany had breached the ECT through measures that unexpectedly and fundamentally changed the process for developing offshore wind farm projects in the North Sea, frustrating their legitimate expectations and depriving their project companies of their economic value. On May 7, 2020, the Tribunal was constituted to adjudicate the dispute between Petitioners and Germany. *See id*. at ¶ 10. The Tribunal was composed of the President, Dr. Veijo Heiskanen, a national of the Republic of Finland, who was appointed by agreement of the parties; Ms. Judith Gill KC, a national of the United Kingdom who was appointed by Petitioners; and Professor Dr. Maria Chiara Malaguti, a national of the Italian Republic who was appointed by Germany (the "Tribunal"). *Id*. at ¶¶ 8-9.

6. In the Arbitration, Petitioners argued that Germany had breached the ECT by treating Petitioners unfairly and inequitably by adopting inconsistent and disproportionate measures which frustrated Petitioners' legitimate expectations to develop offshore wind farm projects in German's exclusive economic zone in the North Sea. *Id*. at ¶¶ 328-29, 372. Petitioners argued that these measures had significantly affected the fair market value of certain project companies while completely destroying the economic value of others. *Id*. at ¶¶ 433, 442, 538, 543. Petitioners alleged that these measures had also destroyed the value of their parent company STRABAG SE's investment into the development of a novel, environmentally friendly technology to install foundations for wind turbines in the German North Sea. *Id*. at ¶ 381. Petitioners sought compensation for (*i*) the diminished value at which NOH1 divested its project companies because of Germany's measures, (*ii*) the entire fair market value of NOH2's project companies but for

3

Germany's unlawful measures, and (*iii*) the profits lost from the future operation of Petitioners' parent company STRABAG SE's business installing foundations in the North Sea, or alternatively the sunk costs invested into the development of that technology. *Id*. at ¶¶ 149, 534, 538-39, 544-45.

7.      The resulting arbitral proceedings were extensive, and Petitioners and Germany participated fully at every stage. The Arbitration involved written submissions of more than a thousand pages over multiple rounds of pre-hearing briefing, as well as document production by both parties. *Id*. at ¶¶ 11-45. This included Germany vigorously contesting the Tribunal's jurisdiction, the merits of the dispute, and the damages claimed by Petitioners. *Id*. at ¶¶ 11, 17, 28, 31, 37. In September 2023, the Tribunal held two weeks of hearing on jurisdiction, merits, and damages in London, United Kingdom, *id*. at ¶ 48, at which the parties made oral submissions and examined witnesses. The parties subsequently submitted post-hearing briefs. *Id*. at ¶¶ 50-53.

8.      On December 18, 2024, the Tribunal issued the Award. The Tribunal unanimously found that it had jurisdiction over Petitioners' claims. A majority of the Tribunal, comprising the President, Dr. Veijo Heiskanen and arbitrator Ms. Judith Gill KC held that, with respect to Petitioners, Germany had violated the guarantee of fair and equitable treatment contained in the ECT, *see id*. at ¶¶ 422-24, 432-34; Ex. F (ECT), at Art. 10(1), and awarded damages, along with associated interest and costs. The Tribunal unanimously found that Germany had also expropriated NOH2's investment in violation of Article 13(1) of the ECT, *see* Ex. A (Award), at ¶ 471; Ex. F (ECT), at Art 13(1), and awarded damages, along with associated interest and legal costs.[1]

---

[1]   The Tribunal held that, with respect to Petitioners' parent company STRABAG SE, Germany's unlawful measures had not caused the collapse of the business for installing foundations using the developed technology and dismissed the claims. *See* Ex. A (Award), at ¶¶ 391-93.

9. Specifically, the Tribunal ordered Germany to pay NOH1 EUR 61,400,000 plus pre-Award interest at a rate of 3% compounded annually from December 18, 2013. The Tribunal awarded NOH2 EUR 179,546,773.55 plus pre-Award interest at a rate of 3% compounded annually from December 18, 2013. The Tribunal also awarded legal costs in the amount of USD 368,500, GBP 548,577.33 and EUR 4,879,218.32. In relation to the damages and costs awarded, the Tribunal ordered Germany to pay post-Award interest at a rate of 3% compounded annually from 60 days following the date of the Award (February 16, 2025), until the date of payment by Germany. *Id*. at ¶ 689.[2]

10. On January 31, 2025, Germany applied for rectification of the Award pursuant to Article 49(2) of the ICSID Convention and Rule 49 of the ICSID Rules 2006. In its application, Germany requested a stay of enforcement of the Award until the rectification decision is rendered. *See* Ex. C (Germany's Request for Rectification of the Award), at ¶ 169. On March 10, 2025, the Tribunal unanimously rejected Germany's request for this stay of enforcement. *See* Ex. B (Decision on Germany's Request for a Stay of Enforcement and other Measures), at ¶ 63.

11. Germany requests the rectification of an operative part of the Award only in relation to the alleged calculation error of reimbursable amounts in the Tribunal's cost decision, that is, paragraph 689(j) of the Award. Ex. C (Germany's Request for Rectification of the Award) at ¶¶ 14-16. The remainder of the Tribunal's monetary award at paragraphs 689(e)-(h) is unaffected by the rectification application.

---

[2] The Tribunal allowed Germany to deduct, upon payment, future compensation paid to NOH2 pursuant to German domestic legislation of 2020 arising from the 2017 measures. *See* Ex. A (Award), at ¶ 689(k). As of the date of this declaration, Germany has not paid NOH2 any additional compensation besides the sums identified at paragraphs 646 to 651 and 689(k) of the Award.

12. Petitioners requested Germany to render payment in accordance with the Award by demand letter dated January 21, 2025, *see* Ex. D (Petitioners' Demand Letter), to which Germany has chosen not to respond. Given that Germany's obligation to comply with the Award is limited only by a stay of enforcement, and no such stay has been issued, the Award is ripe for recognition and enforcement. *See* Ex. E (ICSID Convention Excerpts), at Art. 53(1).

13. Because Germany has applied to rectify the Tribunal's costs award, it is possible that the Tribunal's decision on rectification may affect the amount of the Tribunal's costs order. Petitioners do not presently seek recognition and enforcement of the Award insofar as it relates to the Tribunal's costs decision, including interest on costs (as set out at paragraph 689(j) of the Award). Once the Tribunal's decision on rectification is made, Petitioners will amend the Petition accordingly.

14. As of April 4, 2025, the total amount of damages due under the Award is EUR 334,477,269.51 consisting of: (*i*) EUR 240,946,773.55, plus (*ii*) EUR 92,579,911.43 in pre-Award interest on the damages; and (*iii*) EUR 950,584.53 in post-Award interest on the damages.

15. No prior application for this or similar relief has been made to this District Court.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on April 4, 2025　　　　　By: _____
Frankfurt am Main, Germany　　　　　　　　Carsten Wendler