# Exhibit B

# INTERNATIONAL CENTRE FOR SETTLEMENT OF INVESTMENT DISPUTES

In the arbitration proceeding between

**STRABAG SE, ERSTE NORDSEE-OFFSHORE HOLDING GMBH AND
ZWEITE NORDSEE-OFFSHORE HOLDING GMBH**

Claimants

and

**FEDERAL REPUBLIC OF GERMANY**

Respondent

**ICSID Case No. ARB/19/29
Rectification Proceeding**

---

**DECISION ON THE RESPONDENT'S REQUEST FOR A STAY OF ENFORCEMENT OF THE AWARD,
RETURN OF THE CERTIFIED AWARD AND SUSPENSION OF ACCRUAL OF INTEREST**

---

*Members of the Tribunal*
Dr Veijo Heiskanen, President of the Tribunal
Ms Judith Gill KC, Arbitrator
Prof Dr Maria Chiara Malaguti, Arbitrator

*Secretary of the Tribunal*
Mr Govert Coppens

10 March 2025

## REPRESENTATION OF THE PARTIES

*Representing Strabag SE, Erste Nordsee-Offshore Holding GmbH and Zweite Nordsee-Offshore Holding GmbH*:

Dr Boris Kasolowsky
Dr Carsten Wendler
Ms Kristina Weiler
Mr Gregorio Pettazzi
Dr Alexander Grimm
Mr Samuel Trujillo
Freshfields PartG mbB
Bockenheimer Anlage 44
60322 Frankfurt am Main
Federal Republic of Germany

and

Mr Eric Leikin
Mr Clemens Treichl
Freshfields Rechtsanwälte PartGmbB
Peregringasse 4
1090 Vienna
Republic of Austria

and

Dr Nikolaos Tsolakidis
ARKTIK Rechtsanwälte
Rösch Kruse Tsolakidis PartGmbB
Mendelssohnstraße 66
60325 Frankfurt am Main
Federal Republic of Germany

*Representing the Federal Republic of Germany*:

Dr Anke Meier
Dr Barbara Maucher
Noerr PartGmbB
Börsenstraße 1
60313 Frankfurt am Main
Federal Republic of Germany

and

Ms Annette Tiemann
Federal Ministry of Economic Affairs
and Climate Action
Scharnhorststraße 34-37
10115 Berlin
Federal Republic of Germany

TABLE OF CONTENTS

I.    BACKGROUND ..................................................................................................... 1

II.   THE RESPONDENT'S INTERIM REQUESTS ................................................... 2

    A.  The Respondent's Position......................................................................... 2

        (1)  Request for Provisional Stay........................................................... 2

        (2)  Request to Order Return of the Certified Copy of the Award .............. 5

        (3)  Request for Postponement of the Start of the Interest Period................ 6

    B.  The Claimants' Position ............................................................................ 7

        (1)  Request for Provisional Stay........................................................... 7

        (2)  Request to Order Return of the Certified Copy of the Award ............ 11

        (3)  Request for Postponement of the Start of the Interest Period.............. 12

    C.  The Tribunal's Analysis ........................................................................... 13

        (1)  Request for Provisional Stay......................................................... 13

        (2)  Request to Order Return of the Certified Copy of the Award ............ 16

        (3)  Request for Postponement of the Start of the Interest Period.............. 17

III.  DECISION ........................................................................................................... 19

## I.    BACKGROUND

1.    On 18 December 2024, an arbitral tribunal comprised of Dr Veijo Heiskanen, a national of the Republic of Finland, as President of the Tribunal, and Ms Judith Gill KC, a national of the United Kingdom, and Prof Dr Maria Chiara Malaguti, a national of the Italian Republic, as arbitrators (the "**Tribunal**"), issued its award in the case *Strabag SE, Erste Nordsee-Offshore Holding GmbH and Zweite Nordsee-Offshore Holding GmbH v. Federal Republic of Germany* (ICSID Case No. ARB/19/29) (the "**Award**").

2.    On 31 January 2025, the Federal Republic of Germany (the "**Respondent**") submitted to the International Centre for Settlement of Investment Disputes ("**ICSID**" or the "**Centre**") a Request for Rectification (the "**Request for Rectification**" or the "**Request**"). In addition to a request to rectify certain alleged errors in the Award, the Respondent's Request also included interim requests to (i) stay the enforcement of the Award; (ii) order the Claimants to return the certified copy of the Award; and (iii) postpone the start date of accrual of interest (the "**Interim Requests**"). For the reasons set out below, the Tribunal will address each of these Interim Requests in this Decision.

3.    On the same day, 31 January 2025, the Secretary-General of ICSID transmitted the Request for Rectification to Strabag SE, Erste Nordsee-Offshore Holding GmbH and Zweite Nordsee-Offshore Holding GmbH (the "**Claimants**"). Further on the same day, the ICSID Secretary-General registered the Request for Rectification and transmitted it to the Tribunal.

4.    On 6 February 2025, the Tribunal established the procedural calendar for the rectification proceeding. The Tribunal indicated that it intended to take a decision on the Respondent's Interim Requests after having received the Claimants' response.

5.    Pursuant to the procedural calendar, on 14 February 2025, the Claimants submitted their Response to the Request for Rectification (the "**Claimants' Response**") which set out the Claimants' position in response to each of the Respondent's requests, including the Interim Requests.

6.      On 21 February 2025, the Respondent submitted its Reply to the Claimants' Response (the "**Respondent's Reply**"). In its Reply, the Respondent commented on the Claimants' position on the Respondent's requests for rectification and on the Respondent's Interim Requests.

7.      On 25 February 2025, the Tribunal noted that the Respondent's Reply of 21 February 2025 addressed not only its requests for rectification but also its Interim Requests. The Tribunal indicated that it would await the Claimants' rejoinder before taking a decision on the Respondent's Interim Requests.

8.      On 28 February 2025, the Claimants submitted Additional Observations on the Respondent's Request (the "**Claimants' Additional Observations**").

## II.     THE RESPONDENT'S INTERIM REQUESTS

9.      As noted above, in addition to a request for rectification of the alleged clerical, arithmetical and similar errors in the Award, the Respondent requests a stay of enforcement of the Award. Since the Respondent requests that the enforcement of the Award be stayed "*pending rectification*," the Tribunal will deal with this request by way of an interim decision, before ruling on the remainder of the Respondent's Request for Rectification.

10.     In addition, the Respondent requests that the Tribunal order that (i) the Claimants return the certified copy of the Award and that (ii) accrual of interest be suspended. The Tribunal notes that both of these requests are addressed in the section of the Request dealing with the request for a stay of enforcement of the Award and are set out as requests for interim rulings. Accordingly, the Tribunal will deal with each of them in the present Decision.

### A.     THE RESPONDENT'S POSITION

#### (1)     Request for Provisional Stay

11.     The Respondent requests that the Tribunal order a provisional stay of the enforcement of the Award pending the Tribunal's decision on its Request for Rectification.[1]

---

[1] Respondent's Request, para. 151.

12. The Respondent acknowledges that the question of a stay of enforcement pending a ruling on a request for rectification is not explicitly covered by the ICSID Convention, the ICSID Arbitration Rules or any rules agreed by the Parties; however, it submits that the Tribunal has the power to order a stay pursuant to Articles 44 and 46 of the ICSID Convention. According to the Respondent, the relevant part of Article 44 provides that "[i]*f any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question.*" As to Article 46, it provides the Tribunal with the power to determine "*any incidental or additional claims or counterclaims arising directly out of the subject-matter of the dispute.*" The Respondent further refers to Article 49(2) of the ICSID Convention, which provides that a decision on rectification "*shall become part of the award and the periods of time provided for under paragraph (2) of Article 51 and paragraph (2) of Article 52 shall run from the date on which the decision was rendered.*" The Respondent submits that, in light of the language of Article 49(2), "*the decision to stay the enforcement of the Award is incidental to the decision to rectify the Award*" and accordingly the Tribunal has the power to decide on a stay of enforcement based on Article 46 of the Convention.[2]

13. The Respondent further submits that the Tribunal should stay the enforcement of the Award since "*the Award will not be complete until the decision regarding this Request for Rectification has been rendered.*" In the Respondent's view, "[t]*his is particularly true regarding the errors in the operative part of the Award, i.e., Section IX.lit.j.*" The Respondent contends that "[s]*ince the errors in the Award also concern the arbitrators' fees and the amount of the cost of reimbursement owed to the Claimants, a stay of enforcement is imperative.*" In the Respondent's view, "[a]*s long as the final amounts to be paid by the Parties are not corrected and clarified, there must not be any enforcement attempts.*"[3]

14. The Respondent adds that, in any event, Rule 54 of the ICSID Arbitration Rules, which deals with the stay of enforcement of the award in the context of annulment proceedings,

---

[2] Respondent's Request, paras. 152-156. The Respondent also refers to Article 47 of the ICSID Convention, but does not elaborate on its reliance on the provision.
[3] Respondent's Request, para. 157.

"*has been interpreted in a flexible manner, including for instance requests for supplementary decisions and rectification after the conclusion of an annulment procedure, even if not referred to specifically in the ICSID Arbitration Rules.*" This should apply *mutatis mutandis* in this case.[4]

15.    In its Reply, the Respondent challenges the Claimants' argument that the Tribunal lacks the power to grant a stay of enforcement. According to the Respondent, "[t]*here is no provision in the ICSID Convention that would confirm Claimants' hypothesis that the Tribunal's power ends with the issuance of the Award.*" The Claimants' interpretation of Article 44 is "*narrow*" and "*erroneous,*" and "*creates the false impression that Art. 44 ICSID Convention could only be invoked for decisions of minor importance.*" The Respondent contends that Article 44 "*provides for broad powers of the tribunal*" and "*the basis for far-reaching decisions.*" According to the Respondent, the provision has been invoked in order to (i) stay proceedings pending the determination by a competent forum of an issue relevant to the tribunal's own decision; (ii) deal with challenges to jurisdiction after the issuance of an award on jurisdiction; (iii) remove an expert witness; and (iv) bifurcate proceedings. In any event, according to the Respondent, "*it is simply inconceivable that errors in the operative part of an award should not allow the Tribunal to order a stay of enforcement but instead allow a clearly and undisputedly erroneous award proceed to enforcement.*"[5]

16.    According to the Respondent, the Claimants' assertion that Article 46 of the ICSID Convention cannot serve as a basis for a decision to stay enforcement is "*misleading.*" As long as post-award remedies are available, the Tribunal has jurisdiction. The decision to stay enforcement is incidental to the decision to rectify the Award and therefore the Tribunal has the power to stay enforcement under Article 46. The Claimants' reliance on *Watkins Holdings v. Spain* is therefore misplaced. The case is distinguishable because the parties disagreed that the award was erroneous, and the tribunal therefore "*had to conduct an analysis whether the respondent's request for rectification in view of those purported errors was justified or not.*" Here, however, the Claimants agree with the Respondent that

---

[4] Respondent's Request, para. 158.
[5] Respondent's Reply, paras. 19-24.

the Tribunal's cost decision is erroneous. Similarly, the other cases involving rectification decisions relied upon by the Claimants – *Infracapital v. Spain* and *Masdar v. Spain* – also do not support the Claimants' case because in those cases the respondent "*was obliged to notify the EU Commission of the Award under EU law*," which is "*a different question than the one at play in the rectification proceedings here*."[6]

17.    The Respondent also challenges the Claimants' position that Rule 54 of the ICSID Arbitration Rules cannot be interpreted flexibly. According to the Respondent, the Claimants' position is erroneous because in the present case the errors affect the operative part of the Award, which "*play[] a crucial role during enforcement*." This is not a matter of flexible interpretation but of "*drawing clear judicial conclusions*." In support of its position, the Respondent relies on Article 50(2) of the ICSID Convention, which in its view illustrates that in situations where the "*meaning or scope*" of the award is unclear, enforcement of the award may be stayed. The Respondent also disagrees with the Claimants' position that, since in the present case the error in the operative part of the Award is not significant, a stay of enforcement is not justified. In the Respondent's view, such an error is "*of crucial significance*" and always warrants a stay of enforcement.[7]

**(2)    Request to Order Return of the Certified Copy of the Award**

18.    The Respondent complains that "*ICSID already sent a certified paper copy to Claimants, without first consulting with Respondent whether rectification or other remedies were warranted*." According to the Respondent, since the Award requires rectification "*in many aspects*," the certified copy that ICSID sent to the Claimants on or after 10 January 2025 is "*still riddled with errors, including errors which affect the operative part, and cannot serve any purpose, let alone serve as a basis for any enforcement attempts by Claimants*."

---

[6] Respondent's Reply, paras. 25-28, citing *Infracapital F1 S.à.r.l. and Infracapital Solar B.V. v. Kingdom of Spain*, ICSID Case No. ARB/16/18, Decision on the Respondent's Request for the Stay of Enforcement of the Award, 24 August 2023 (available at: https://italaw.com/sites/default/files/case-documents/180321.pdf) ("*Infracapital v. Spain*"), paras. 18 *et seq.*; *Masdar Solar & Wind Cooperatief U.A. v. Kingdom of Spain*, ICSID Case No. ARB/14/1, Decision on the Respondent's Application to Stay Enforcement of the Award, 24 August 2018 (available at: (https://www.italaw.com/sites/default/files/case-documents/italaw10135.pdf) ("*Masdar v. Spain*"), para. 7; *Watkins Holdings S.à.r.l. and others v. Kingdom of Spain*, ICSID Case No. ARB/15/44, Decision on Spain's Request for Rectification of the Award, 13 July 2020 (available at: https://www.italaw.com/sites/default/files/case-documents/italaw11742.pdf) ("*Watkins v. Spain*"), para. 23.

[7] Respondent's Reply, paras. 29-32.

The Respondent therefore requests that the Tribunal order the Claimants to send the certified copy it received from the ICSID Secretariat back to the Secretariat.[8]

19.    In its Reply, the Respondent maintains its request for return of the certified Award. According to the Respondent, "[e]*nforcement on the basis of erroneous award will cause more problems compared to the inconvenience of the issuance of a new correct copy.*"[9]

### (3)    Request for Postponement of the Start of the Interest Period

20.    The Respondent further requests that the Tribunal decide that post-award interest will not start accruing on 17 February 2025, but only 60 days from the date of the Tribunal's decision on the Respondent's Request for Rectification.[10]

21.    The Respondent notes that the operative part of the Award, specifically Section IX. lit. h, refers to "*the date of this Award*" as the start date for the accrual of interest. According to the Respondent, since the post-award interest can only accrue on sums "*truly due,*" the term "*the date of this Award*" can only designate the version of the Award that can serve as a basis for enforcement. In the event of rectification, however, "*the initial Award can no longer serve as basis for enforcement, as it has become subject to modification by the Tribunal.*" This is in particular the case here as the operative part of the Award requires rectification of the amounts awarded to the Claimants. In the circumstances, the Award can no longer be considered to have been issued on 18 December 2024, but only on the date of rectification.[11]

22.    Similarly, since the Respondent has requested a stay of enforcement, an unenforceable award cannot have any effect on the accrual of interest. The date of the Award must be understood as referring to the date on which the Award has been corrected and dispatched to the Parties. Procedural fairness also requires postponement of the start of the interest period: since the operative part of the Award must be corrected, post-award interest cannot start accruing until the correct sums due are determined. Finally, the short deadlines fixed

---

[8] Respondent's Request, paras. 157, 160.
[9] Respondent's Reply, para. 33.
[10] Respondent's Request, para. 161.
[11] Respondent's Request, para. 162.

in the ICSID Convention and in the Award cannot be held against the Respondent. While the request for rectification must be filed within 45 days of the Award, interest will start accruing 60 days after the Award. The very short period of fifteen days between the two dates is unfair to the Respondent, given the "*many errors in* [the] *Award*."[12]

23.    In its Reply, the Respondent submits that the operative part of the Award can only be enforceable if it is clear and unambiguous, which is not the case here. Also, according to the Respondent, it does not matter whether the error in the operative part of the Award is large or small; as long as the error is not corrected, post-award interest "*must not accrue*." This is a matter of procedural fairness, in particular because post-award interest is not mentioned in the ICSID Convention, the ICSID Arbitration Rules or the Energy Charter Treaty, and accordingly any errors "*are the Tribunal's responsibility alone*." In any event, according to the Respondent, after rectification, the post-award interest "*must start running anew*."[13]

### B.    THE CLAIMANTS' POSITION

24.    The Claimants submit that the rectification mechanism cannot form a basis for a stay of the enforcement of the Award, nor does it stop post-award interest from accruing. The ICSID Convention does not authorize arbitral tribunals to take such decisions – a position which has been upheld by all ICSID tribunals that have been called to consider the issue.[14]

### (1)    Request for Provisional Stay

25.    The Claimants submit that the Tribunal does not have the power to grant a stay of enforcement. The ICSID Convention and the ICSID Arbitration Rules "*expressly regulate the limited and exceptional circumstances*" in which such authority exists, and rectification proceedings are not among them.[15]

26.    The Claimants recall that rectification is governed by Article 49 of the ICSID Convention and Rule 49 of the ICSID Arbitration Rules; however, a stay of enforcement is not

---

[12] Respondent's Request, paras. 163-165.
[13] Respondent's Reply, paras. 34-38.
[14] Claimants' Response, paras. 5-6.
[15] Claimants' Response, para. 7.

contemplated in either provision. According to the Claimants, a stay of enforcement is only envisaged in connection with requests for revision and interpretation, and an annulment proceeding, as Article 54(1) of the ICSID Convention makes clear. Article 44 of the ICSID Convention, which the Respondent relies on, only applies to "*questions of procedure;*" however, the rectification process, which takes place after the issuance of an award, cannot be considered part of the arbitral process. Since an award has already been issued, the arbitral process has run its course. The Tribunal's authority to rectify clerical or arithmetical errors concerns a phase after the conclusion of the arbitral process and is based on Article 49 of the ICSID Convention, not Article 44. In support of their position, the Claimants rely on *Infracapital v. Spain*, where the tribunal specifically found that a request for a stay of enforcement of an award does not qualify as an issue of procedure under the ICSID Convention or the ICSID Arbitration Rules.[16]

27.     In the Claimants' view, Article 46 of the ICSID Convention is not relevant either as it deals with incidental or additional claims or counterclaims, and a request for a stay of enforcement does not fall under any of these categories. The Respondent's position is also unsupported by arbitral practice; the Claimants refer, in support, to *Infracapital v. Spain*, *Masdar v. Spain* and *Watkins v. Spain*. According to the Claimants, the Respondent's attempt to rely on ICSID Arbitration Rule 54(1) also fails since it confers on ICSID tribunals the power to stay enforcement only in the context of interpretation, revision or annulment of an award. The Tribunal is now *functus officio* and has no power over the Award, except within the narrow confines of Article 49 of the ICSID Convention, as confirmed by the *Infracapital* tribunal. It is therefore not surprising that the Respondent is unable to rely on a single precedent of a successful stay of enforcement application during a rectification phase. The *Pey Casado v. Chile* decision relied upon by the Respondent in support of its argument that ICSID Arbitration Rule 54(1) should be applied "*in a flexible manner*" is not relevant because it was issued in connection with an annulment proceeding. The argument was also rejected by the *Infracapital* tribunal.[17]

---

[16] Claimants' Response, paras. 8-14, citing, *inter alia*, *Infracapital v. Spain*, para. 28.
[17] Claimants' Response, paras. 15-25, referring to, *inter alia*, *Víctor Pey Casado and President Allende Foundation v. Republic of Chile*, ICSID Case No. ARB/98/2, Decision on the Republic of Chile's Request for a Stay of Enforcement

28.    Finally, according to the Claimants, even if the Tribunal considered that it had the power to decide on the Respondent's request for stay, the request would fail on the merits. Staying enforcement is an "*exceptional remedy*" and "*justified by fact-specific circumstances.*" The Tribunal would have to weigh the potential prejudice caused to the applicant in case of enforcement against the potential prejudice caused to the award creditors, noting that the Respondent's rectification request concerns only the amount of USD 368,500 of ICSID and Tribunal costs. In this case, the result of the balancing exercise clearly warrants the rejection of the Respondent's application. In any event, and in the alternative, if a stay were to be granted, the Tribunal would have to make it conditional on the Respondent providing a bank guarantee "*or, at the very least, an undertaking that it will promptly pay any amounts due upon rectification of the Award.*"[18]

29.    In their Additional Observations, the Claimants reiterate their position that the Tribunal does not have the power to grant the Respondent's request for a stay of enforcement. According to the Claimants, the Respondent's reasoning in its Reply is flawed because it "*essentially negates the finality of ICSID awards.*" After the issuance of the Award, the Tribunal is *functus officio,* as provided for in Article 53(1) of the ICSID Convention. The Tribunal's "*general and inherent powers*" have ceased, and it only has the powers expressly conferred on it by the ICSID Convention, and "*granting a stay of enforcement is not one of these powers.*"[19]

30.    The Claimants also challenge the Respondent's continued reliance in its Reply on Articles 44 and 46 of the ICSID Convention and ICSID Arbitration Rule 54.

31.    First, according to the Claimants, Article 44 of the ICSID Convention "*only concerns questions of procedure that are not regulated in the ICSID Convention or the ICSID Arbitration Rules, but nonetheless necessary to conduct the arbitration.*" According to the Claimants, these are questions "*internal*" to the proceeding, such as procedural timetable or hearing organization, not "*external,*" such as the legal effects of the Award or its

---

of the Unannulled Portion of the Award, 16 May 2013 (available at: https://www.italaw.com/sites/default/files/case-documents/italaw1431.pdf), para 31.

[18] Claimants' Response, paras. 26-28.

[19] Claimants' Additional Observations, paras. 5-7.

enforceability. A stay of enforcement is specifically regulated by the ICSID Convention and the ICSID Arbitration Rules and "*thus also falls outside the scope of Article 44.*"[20]

32.    Second, the Claimants contend that the Respondent's argument that enforcement qualifies as an incidental claim under Article 46 of the ICSID Convention is "*non-sensical*" since pursuant to ICSID Arbitration Rule 40(2), incidental claims under Article 46 must be presented not later than in the reply and a counter-claim no later than in the counter-memorial. The issuance of an award and request for a stay of enforcement are "*questions that necessarily arise after the limitation period set forth in ICSID Arbitration Rule 40(2)*" and therefore are not covered by Article 46 of the ICSID Convention. According to the Claimants, "[t]*he unanimous and consistent view of ICSID tribunals confirms that Articles 44 and 46 ICSID Convention are irrelevant for stay of enforcement purposes.*" The Respondent's argument that the present case can be distinguished "*misses the point*" since the question whether a stay of enforcement is appropriate in the circumstances "*does not even arise because the Tribunal's power to grant such stay does not exist in the first place.*"[21]

33.    Third, according to the Claimants, ICSID Arbitration Rule 54 does not apply to rectification. The Respondent's new argument that the application of Rule 54 to rectification is not a matter of "*flexible interpretation*" but one relating to the need for "*judicial clarity*" does not stand scrutiny. According to the Claimants, "*purported issues of 'judicial clarity' cannot override the clear terms of the ICSID Convention;*" this would be contrary to the rules of treaty interpretation set out in the Vienna Convention on the Law of Treaties. In practice, ICSID tribunals rectify operative parts of the award, including those affecting the amount of damages awarded, without staying enforcement of the award.[22]

34.    Finally, the Claimants submit that, in any event, the Respondent's request for a stay of enforcement has no merit. According to the Claimants, the Respondent "*completely fails to engage with the Claimants' arguments*" and "*makes no attempt to justify its request.*"

---

[20] Claimants' Additional Observations, paras. 8-9.
[21] Claimants' Additional Observations, paras. 10-12.
[22] Claimants' Additional Observations, paras. 13-18.

The Respondent does not offer "*any substantive rebuttal*" to the Claimants' argument that any stay of enforcement "*may in any case only cover the part of the Award that is subject to the request for rectification, ie it must be limited to the costs decision*." The Claimants also reiterate their position that, should the Tribunal consider that it has the requisite power and find that it would be appropriate to grant a full or partial stay of enforcement, "*this should be done conditionally upon the provision of a bank guarantee by Respondent or, at the very least, an undertaking that Respondent will promptly pay any amounts due upon rectification*." The Respondent's allegation that there is no legal basis for the request is incorrect since there is, in the Claimants' view, "*an established common practice in procedures contemplating the possibility of a stay of enforcement, and has now even been codified in the most recent version of the ICSID Arbitration Rules*."[23]

### (2)    Request to Order Return of the Certified Copy of the Award

35.    The Claimants submit that, by way of its request for an order that the Claimants return the certified copy of the Award to the Secretary-General, the Respondent "*effectively seeks to achieve a stay of enforcement by another route*." According to the Claimants, the Tribunal lacks authority to issue the requested order: pursuant to ICSID Administrative and Financial Regulation 28(2), the Secretary-General of ICSID exercises the depositary functions of this arbitration, which includes making available certified copies of the Award upon request to the Parties. The Tribunal does not have such powers.[24]

36.    Moreover, according to the Claimants, under ICSID Administrative and Financial Regulation 28 and ICSID Arbitration Rules 48(3) and 49(4), any party may request a certified copy reflecting the current status of an award at any time. There is therefore no basis for the Respondent's request.[25]

37.    In their Additional Observations, the Claimants reiterate their position that the Tribunal lacks authority to grant the Respondent's request. According to the Claimants, the

---

[23] Claimants' Additional Observations, paras. 19-20.
[24] Claimants' Response, paras. 29-31.
[25] Claimants' Response, paras. 32-33.

Respondent does not in its Reply provide any legal basis for its request or engage with the Claimants' arguments.[26]

### (3)    Request for Postponement of the Start of the Interest Period

38.    The Claimants argue that the Respondent's request to suspend the accrual of post-award interest has no merit and cannot be tied to the issue of staying enforcement. Indeed, even in the event of a stay of enforcement, interest will continue to accrue.[27]

39.    According to the Claimants, there is also no basis for the Respondent's reliance on "*procedural fairness*." Post-award interest accrues on the basis that the Respondent caused the Claimants a loss quantified by the Tribunal in a binding Award, and under the ICSID Convention, this sum must be paid following the relevant grace period. Any delay causes interest to accrue which compensates the Claimants for their inability to obtain and make use of what the Tribunal has determined to be the Claimants' money.[28]

40.    The Claimants submit that the Respondent also confuses the issue of accrual of interest and the calculation of the interest, which is "*a practical matter only affecting a minor sum relating to the Tribunal's cost award*." Moreover, if the Respondent wishes to avoid substantial post-award interest, "*it is at liberty to pay to the Claimants the amounts undisputedly due*."[29]

41.    In their Additional Observations, the Claimants contend that post-award interest has its legal basis in the compensation awarded to the Claimants in a binding ICSID award; once such an award is issued and the amounts become due, "*post-award interest starts – and never stops – accruing until it is complied with*." According to the Claimants, the Respondent does not provide any legal basis or precedent for its argument of procedural unfairness and fails to engage with the Claimants' argument.[30]

---

[26] Claimants' Additional Observations, paras. 21-22.
[27] Claimants' Response, paras. 34-35.
[28] Claimants' Response, para. 36.
[29] Claimants' Response, para. 37.
[30] Claimants' Additional Observations, paras. 23-25.

C.      THE TRIBUNAL'S ANALYSIS

(1)      Request for Provisional Stay

42.    As summarized above, the Respondent acknowledges that the question of a stay of enforcement of an award in connection with a request for rectification is "*not explicitly covered*" by the ICSID Convention, the ICSID Arbitration Rules or any rules agreed by the Parties. However, the Respondent argues that the Tribunal has the power to order a stay pursuant to Articles 44, 46 and 47 of the ICSID Convention.

43.    Article 44 of the ICSID Convention provides:

> *Any arbitration proceeding shall be conducted in accordance with the provisions of this Section* [i.e. Section 3: "Powers and Functions of the Tribunal"] *and, except as the parties otherwise agree, in accordance with the Arbitration Rules in effect on the date on which the parties consented to arbitration. If any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question.*

44.    The Respondent argues that the Tribunal "*has the power to decide a stay of enforcement on the basis of Art. 44 ICSID Convention*," quoting in support the second sentence of Article 44: "*If any question of procedure arises which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties, the Tribunal shall decide the question.*"

45.    Article 46 of the ICSID Convention further provides:

> *Except as the parties otherwise agree, the Tribunal shall, if requested by a party, determine any incidental or additional claims or counterclaims arising directly out of the subject-matter of the dispute provided that they are within the scope of the consent of the parties and are otherwise within the jurisdiction of the Centre.*

46.    The Respondent argues that the decision to stay is "*incidental to the decision to rectify the Award*" and the Tribunal therefore has the power to decide on a stay of enforcement based on Article 46 of the ICSID Convention.

47.    The third provision relied upon by the Respondent, Article 47 of the ICSID Convention, provides:

> *Except as the parties otherwise agree, the Tribunal may, if it considers that the circumstances so require, recommend any provisional measures which should be taken to preserve the respective rights of either party.*

48.    The Tribunal notes that, while the Respondent refers to Article 47 in support of its position, it makes no specific argument on the basis of the provision, nor explains how the provision is relevant to its request for a stay. Indeed, it appears that the reference to Article 47 of the ICSID Convention merely supports the Respondent's argument insofar as it is based on Article 46 of the ICSID Convention.[31]

49.    The Respondent further argues that Rule 54 of the ICSID Arbitration Rules, which specifically deals with the stay of enforcement of an ICSID award, "*has been interpreted in a flexible manner, including for instance requests for supplementary decisions and rectification after the conclusion of an annulment procedure, even if not referred to specifically in the ICSID Arbitration Rules.*" According to the Respondent, "*the arguments apply* mutatis mutandis *to this Request for Rectification.*" In its Reply, the Respondent further submits that the application of Rule 54 is a matter of "*drawing clear judicial conclusions,*" drawing on a comparison with an application for interpretation pursuant to Article 50(2) of the ICSID Convention, which specifically allows a stay of enforcement.

50.    The Tribunal notes that the Respondent does not rely in support of its request for a stay on Article 49 of the ICSID Convention or Rule 49 of the ICSID Arbitration Rules, which specifically deal with requests for rectification. Indeed, neither provision envisages that an ICSID tribunal has the authority to order a stay of enforcement of an award in connection with a request for rectification. By contrast, the provisions of the ICSID Convention dealing with requests for interpretation (Article 50), revision (Article 51) and annulment (Article 52) specifically provide that, "*if the circumstances so require,*" an ICSID tribunal may stay enforcement of the award pending its decision. Furthermore, Rule 54 of the

---

[31] See paragraph 12 and footnote 2 above.

ICSID Arbitration Rules, which specifically deals with "*Stay of Enforcement of the Award*," provides that "[t]*he party applying for the interpretation, revision or annulment of an award may in its application … request a stay in the enforcement of part or all of the award to which the application relates*."

51.    It is clear from these provisions that an ICSID tribunal is empowered by the ICSID Convention and the ICSID Arbitration Rules to order a stay of enforcement of an award, if the circumstances so require, only in the context of requests for interpretation, revision and annulment, but not in the context of a request for rectification. The distinction is eminently sensible as requests for rectification may only be made to correct "*any clerical, arithmetical or similar errors in the award*" and therefore are to be made within a relatively short period of 45 days after the date the award was rendered. Accordingly, such requests, unlike applications for revision or annulment, may generally be expected to have, even when granted, a relatively limited impact on the award and accordingly a stay of enforcement is not necessary or indeed appropriate.

52.    The Tribunal is also unable to find authority in the provisions relied upon by the Respondent, Articles 44 and 46 of the ICSID Convention, to grant its request for a stay of enforcement of the Award. These provisions regulate the conduct of the arbitral proceedings and the powers and functions of an ICSID tribunal in those proceedings, not the tribunal's limited powers and functions in the post-award phase. Moreover, Article 44 only applies if a question of procedure arises "*which is not covered by this Section or the Arbitration Rules or any rules agreed by the parties.*" As noted above, the question of a stay of enforcement is specifically covered by ICSID Arbitration Rule 54 and therefore is not a question of procedure that is "*not covered*" by the ICSID Arbitration Rules; it is specifically covered. The Respondent's request for a stay therefore does not qualify as a "*question of procedure*" within the meaning of Article 44 of the ICSID Convention or an "*incidental or additional claim*[]" or "*counterclaim*[s]" within the meaning of Article 46 of the ICSID Convention. Nor does it qualify as a "*provisional measure*[s]" under Article 47 of the ICSID Convention, insofar as the Respondent relies on this provision in support of its request, for the same reasons.

53.     The Tribunal notes that other ICSID tribunals that have dealt with a request for a stay of enforcement of an award in connection with a rectification or supplementation proceeding have reached similar conclusions.[32] The Tribunal is not persuaded by the Respondent's argument that the present case can be distinguished from the cases cited by both Parties in support of their positions – *Infracapital v. Spain*, *Masdar v. Spain* and *Watkins v. Spain*. The issue is not whether the circumstances of the present case are different from the cases cited and therefore justify a stay of enforcement; the issue is whether the Tribunal has the power to stay enforcement of an award in connection with a request for rectification. As determined above, the Tribunal has no such authority under the ICSID Convention or the ICSID Arbitration Rules. This is also the conclusion reached in each of the cases cited by the Parties.[33]

54.     The Respondent's request for a stay of enforcement of the Award is therefore denied.

### (2)      Request to Order Return of the Certified Copy of the Award

55.     The Respondent also requests that the Tribunal order the Claimants to return the certified copy of the Award to the ICSID Secretary-General as it contains errors that have not been rectified.

56.     The Tribunal notes that the Respondent does not identify any legal basis for its request, and indeed there is none in the ICSID Convention or in the ICSID Arbitration Rules or regulations. As pointed out by the Claimants, under ICSID Administrative and Financial Regulation 29 the depositary functions are vested in the ICSID Secretary-General. Paragraph 2 of Regulation 29 specifically provides that the Secretary-General "*shall make certified copies of the documents referred to in paragraph (1)(c)-(e)* [including 'Award'] *available to the parties*." ICSID Arbitration Rule 48(3) further provides that "[t]*he Secretary-General shall, upon request, make available to a party additional certified copies of the award*." Accordingly, under these provisions the authority to issue certified

---

[32] *Infracapital v. Spain*; *Masdar v. Spain*; *Watkins v. Spain*.
[33] *Infracapital v. Spain*, para. 39; *Masdar v. Spain*, para. 24; *Watkins v. Spain*, para. 74.

copies of awards rests with the Secretary-General, and the Tribunal has no power to constrain the Secretary-General in performing such functions.

58.    The Respondent's request that the Tribunal order the Claimants to send back the certified copy of the Award sent to the Claimants by the Secretary-General on or after 10 January 2025 is therefore denied.

### (3)    Request for Postponement of the Start of the Interest Period

59.    The Respondent requests that "*the Tribunal find that post-award interest will not start to accrue on 17 February 2025, but only 60 days from the date of the decision*" in paragraph 161 of its Request for Rectification. This particular request was not initially included in the Respondent's request for relief; however, the Tribunal notes that the Respondent amended its request for relief in its Reply, adding a request for suspension of interest.[34]

60.    As summarized above, the Respondent argues that (i) since the operative part of the Award must be rectified, the date referred to in the Award as the start date for the accrual of interest cannot serve as a basis for enforcement; (ii) since the Respondent has requested a stay of enforcement, "*an unenforceable Award cannot have any effect regarding the accrual of interest;*" (iii) procedural fairness warrants a postponement of the start of the interest period since post-award interest cannot start accruing when it is "*unclear on what basis it will accrue;*" and (iv) the deadlines in the ICSID Convention and the Award for the accrual of interest "*cannot be held against Respondent*" in view of the short time period of fifteen days between the deadline for filing a rectification request and the start date for accrual of interest. In its Reply, the Respondent reiterates these arguments, adding that (i) the operative part of an award is only enforceable if it is clear and unambiguous; and that (ii) the extent of the error in monetary terms is not relevant.

61.    As with its request for return of the certified copy of the Award, the Respondent does not identify any legal rule or provision, including in the ICSID Convention or in the ICSID Arbitration Rules or regulations, that would invest the Tribunal with the necessary authority to grant the request. The Tribunal notes that even those provisions of the ICSID

---

[34] Respondent's Reply, para. 42(1).

Convention and the ICSID Arbitration Rules that specifically authorize a stay of enforcement of the Award do not provide for the suspension of the accrual of interest during the period of stay.

62.    The Respondent's request that the accrual of interest be suspended is therefore denied.

## III.    DECISION

63.    For the reasons given above, the Tribunal decides:

a.    The Respondent's request that the enforcement of the Award be stayed is denied;

b.    The Respondent's request that the Tribunal order the Claimants to return the certified copy of the Award sent by the Secretary-General to the Claimants on or about 10 January 2025 is denied;

c.    The Respondent's request that the Tribunal order suspension of the accrual of interest until the Award has been rectified is denied; and

d.    The Tribunal's decision on costs is reserved.

_____
Veijo Heiskanen
President of the Tribunal
Date: 10 March 2025